WOODLEY et ux. v. HUGHES.

No. 6647.

Court of Civil Appeals of Texas.
Texarkana.

Oct. 30, 1952.

Rehearing Denied Nov. 27, 1952.

Maxwell Welch, New Boston, for appellants.

Brown & Brown, Texarkana, for appellee.

WILLIAMS, Justice.

In this trespass to try title action, appellee, C. C. Hughes, plaintiff below, recovered of and from appellants, Jack Woodley and wife, Elizabeth Woodley, defendants below, all right, title and interest in a 40-acre tract of land, more or less, out of the Wesley Byers H. R. Survey in Bowie County, Texas. Defendants did not seek any affirmative relief, their prayer being that plaintiff take nothing by his suit and that they be allowed to go hence without day.

Special Issue No. 1, answered "yes" by the jury, reads: "Do you find from a preponderance of the evidence that plaintiff C. C. Hughes, has had peaceable, adverse and continuous possession of the land described in plaintiff's petition and involved in this suit, using or enjoying the same for a period of ten consecutive years or more after the year 1939, to the filing of this suit, March 19, 1951." In connection with this issue, the court instructed the jury: "that by the term 'peaceable possession' as used in this charge, is meant such possession as is continuous and uninterrupted by adverse suit to recover the estate. You are further instructed that by the term 'adverse possession' as used herein, is meant an actual and visible appropriation of the lands, commenced and continued under a claim of right, inconsistent with and hostile to the claim of another." No other issue was submitted to the jury. The judgment for plaintiff is grounded on above jury finding.

In 1916, L. C. Pirkey executed a deed of trust to American Freehold and Mortgage Company to secure a loan of $3,000, evidenced by a note therein described. In 1925, he renewed this loan with the Federal Land Bank of Houston, assignee of the mortgage company. In 1926, in consideration of $1 and love and affection he conveyed the same 718 acres described in the deeds of trust to plaintiff C. C. Hughes, who assumed payment of the debt. March 17, 1936, the Land Bank acquired title to the tract through foreclosure of its lien. A week later, plaintiff Hughes rented the tract from the Land Bank evidenced by a written rental contract. Under deed dated March 27, 1936, filed for record March 30, 1936, the Land Bank sold the tract to W. E. Butler and J. K. Telford, subject to above-mentioned rental contract. Under a deed dated January 28, 1939, filed for record May 15, 1939, Butler and Telford conveyed the 718-acre tract to J. L. Lumpkin under whom Mrs. Elizabeth Woodley as an heir, asserts title.

The description of the land in above-mentioned rental contract of March 24, 1936, which the Land Bank leased to plaintiff reads: "The following described prop-

erty to-wit: 718 acres out of the W. Byers Survey and being Loan No. 44310—Name– C. C. Hughes, NFLA DeKalb, and located in Bowie County, Texas, .* * *." The contract provided that the lease shall run from March 24, 1936, to December 1, 1936. Plaintiff agreed to pay certain shares of the crop to be grown thereon in 1936 as rents. This lease further provided that Hughes would surrender possession by December 1, 1936. Under the terms of another instrument executed the same date, Hughes renounced and disclaimed all claims or rights in and to all of the improvements situated upon above described property.

In both deeds of trust, in the 1926 deed from Pirkey to Hughes, in the deed from the Land Bank to Butler and Telford and in the deed from Butler and Telford to J. L. Lumpkin, hereinabove mentioned, the field note description of the 718-acre tract of land in each instrument, reads as follows: "Beginning at a stake, the South West corner of said Byers Survey; Thence North 1077 vrs. a stake at the South West corner of a 77 acre tract conveyed to J. C. Wooten by T. E. Fowler, et al., December 1, 1903, by deed recorded in Book 53, page 398, Bowie County Deed Records; Thence East with the South boundary line of said 77 acre tract and the South boundary line of a 50 acre tract, in all east 1063 vrs. a stake on the bank of Blythe Creek; Thence in a northwesterly direction with the meanderings of said creek to a stake where it crosses the north boundary line of said Byers Survey, which point is the north east corner of said 77 acre tract conveyed to Wooten by Fowler, et al., and which point is 25 vrs. east of the north west corner of said Byers Survey; Thence East with the north boundary line of said Byers Survey 2115 vrs. to a stake, the Northeast corner of said survey; Thence south with the east boundary line of said survey 1240 vrs. to the southwest corner of the Henry Proctor Survey, the same being the re-entering corner of the Byers Survey; Thence east with H. C. Proctor's south line 528 vrs. to the center of the old DeKalb and Dalby Springs Road; Thence South with the meanderings of said road as follows : * * * South 11 West 235 vrs.; South 25 West 175 vrs.; to a stake in the center of said road; Thence West 412 varas a stake; Thence South 510 varas a stake in the south boundary line of said Byers Survey; Thence West with the south boundary line of said survey 2140 vrs. to the place of beginning, containing 718 acres of land, more or less.

A deed executed by L. C. Pirkey, dated January 7, 1939, and filed for record January 20, 1940, purports to convey to plaintiff two tracts of land, described as follows: "All that certain tract or parcel of land about 1½ miles North of Dalby Springs. Beginning on the north bank of Blythe Creek in the East boundary line of Highway No. 11 leading from Dalby Springs to DeKalb; Thence north with said highway 408 yards; Thence east 420 yards; Thence South 398 yards; Thence Westerly 580 yards to the beginning. Second tract: Beginning for corner on the south bank of Blythe's Creek in center of Old DeKalb and Dalby Springs Road; Thence south with said road 408 yards; thence east 740 yards; Thence north 308 varas to Blythe Creek; Thence North west with creek to beginning; together with other property. Also all remaining interest I have in W. Byers Survey * * *." The field note description of the land sued for as set out in plaintiff's original petition is the same as set out in the description of the first tract in above deed, and in the petition alleged to contain 40 acres, more or less, out of Wesley Byers H. R. Survey, about 1½ miles North of Dalby Springs.

It is observed that the "E. B. line of Highway No. 11 leading from Dalby Springs to DeKalb" is called for as the W. B. Line of the first tract in the deed from Pirkey to plaintiff, and the "center of Old DeKalb and Dalby Springs Road" is called for as the west boundary line of the second tract in the same deed. It is also observed that the most easterly boundary line of the 718-acre tract calls for "the old DeKalb and Dalby Springs Road." According to the testimony of the County Surveyor who prepared the plat introduced in evidence, the 40-acre tract in controversy would be embraced in the field notes of the 718-acre tract. The plat he prepared shows it to be so located. This plat was not made from an

actual survey but from field notes taken from the various instruments. Plaintiff, in his testimony, disputes this conclusion. He claims that he was present at a survey of the 718-acre tract many years prior thereto, and that the E. B. line of the 718-acre tract was located farther west than as urged by defendants. It was plaintiff's position that the tract in controversy is no part of the 718-acre tract. Testimony that plaintiff attempted to buy this 40 acres during the period involved was denied by plaintiff with his claim that he tried to buy a 10-acre tract situated elsewhere. The evidence reflects that between February 22, 1926, and January 7, 1939, time undisclosed in this record, that the "Old DeKalb and Dalby Springs Road" was relocated to the west of its original location and we suppose is now known as Highway No. 11. If this change was so made, the evidence is silent as to distance to the west it was moved. The patent to the Wesley Byers Survey does not call for any specific number of acres. The county surveyor calculated that this survey contained 943.53 acres, and that at least 132 acres were "in this neck of land that extends out," that "lies east of the present new road there," and "south of the Proctor Survey."

As against the plea of not guilty urged by defendants, it was incumbent upon plaintiff to establish by a preponderance of the evidence that the tract of land sued for was not a part of the 718-acre tract. As plaintiff and as against this plea of not guilty, it was incumbent upon plaintiff to request a submission of such issue and obtain an affirmative finding that the tract in controversy was not or had not been a part of the 718-acre tract in order to escape the legal consequences of the rental contract above mentioned. An issue of fact as to the location was raised under the evidence above briefly summarized.

If in fact the tract in controversy be a part of the 718-acre tract, then under the rental contract executed by plaintiff he then retained possession as a tenant of the predecessor in title of defendants. It is not intimated that plaintiff ever gave actual notice that he had repudiated such relationship. His use and occupancy of the premises remained substantially the same, both prior and subsequent to the lease and through the years involved. In Doherty v. Jensen, Tex.Civ.App., 174 S.W.2d 77, 82, applicable here if the 40 acres be a part of the 718-acre tract, "It is well settled that, where entry upon land is made by a limitation claimant in recognition of the title of the true owner. thereof, a claim of title thereto by adverse possession cannot be perfected in favor of such party until he had established that he had repudiated the owner's title and commenced the assertion of an open and notorious claim to the land and that he has brought home to the owner thereof actual or constructive notice of such repudiation of the owner's title and the commencement of the assertion of an adverse claim to the land. Thompson v. Richardson, Tex.Com.App., 221 S.W. 952; Federal Land Bank of Houston v. King, Tex. Com.App., 122 S.W.2d 1061; Davis v. Lund, Tex.Com.App., 41 S.W.2d 57; Mosley v. Gulf Production Co., Tex.Civ.App., 111 S.W.2d 726." See also 2 C.J.S., Adverse Possession, §§ 81, 228, pp. 627, 864; 2 T.J., p. 144.

Plaintiff's recordation on January 20, 1940, of the deed from Pirkey to him did not constitute constructive notice to defendants, standing alone, of plaintiff's repudiation of his tenancy under which he entered, if this 40 acres be a part of the 718-acre tract. Werts' Heirs v. Vick, Tex. Civ.App., 203 S.W. 63; Cox v. Clay, Tex. Civ.App., 237 S.W.2d 798.

In the absence of the submission and an affirmative finding on the material issue of fact above pointed out, essential to the validity of the judgment entered, which should be fully developed by surveying evidence and other data upon another trial, the judgment will be reversed and the cause remanded.

Reversed and remanded.