DOHERTY et al. v. JENSEN et al.

No. 11526.

Court of Civil Appeals of Texas. Galveston.

July 29, 1943.

Rehearing Denied Sept. 30, 1943.

Markwell & Stubbs, of Galveston, and Fouts, Amerman & Moore, of Houston (A. E. Amerman and A. E. Amerman, Jr., both of Houston, of counsel), for appellants.

Harris & Coltzer and George W. Coltzer, all of Galveston, and Albert J. DeLange, Frank A. Stamper, and Robert P. Beman, Jr., all of Houston, for appellees.

MONTEITH, Chief Justice.

This action in trespass to try title was brought by appellees, J. A. Jensen and wife, to recover from appellants, W. J. Doherty and others, the title to and possession of 166.19 acres of land, a part of the A. G. Reynolds League Survey in Galveston and Brazoria Counties, Texas.

By cross-action, appellants, as alleged record owners of the land in controversy, impleaded both appellees, J. A. Jensen and wife and N. W. Pearson and wife.

All appellees answered by pleas of general denial and not guilty. They specially pled the ten-year statute of limitations. Vernon's Ann.Civ.St. art. 5510.

For convenience, appellees, J. A. Jensen and wife, will be designated here as "ap-

pellees Jensen"; appellees, N. W. Pearson and wife, will be designated as "appellees Pearson", and appellants, J. W. Doherty et al., will be designated as "appellants".

The jury, with respect to the Pearson limitation claim, returned a verdict in which they found, in effect, that appellees Pearson had had peaceable and adverse possession of that part of the land in controversy claimed by them for a period of ten years or more after the year 1925 to October 9, 1939. They found, however, in answer to another issue submitted, that the claimed possession by said appellees during said period had not been held "adversely and in hostility against the true owners."

With respect to the claim of appellees Jensen, the jury found that they had had peaceable and adverse possession of the land claimed by them for a period of ten years after 1911 and after 1927 and before April 8, 1939. They found, however, in answer to other issues submitted, that said appellees had not been in adverse possession of said land under a claim of right inconsistent with the claim of Norman Kittrell, Jr., the then trustee of the record owners of the land claimed by them in the year 1918, and that from 1911 through 1924 they had recognized Norman Kittrell, Jr., as the owner thereof.

After said verdict was returned appellants filed a motion for judgment in their favor on the alleged ground that both appellees Pearson and Jensen had failed to establish their limitation titles to those portions of the 166 acres of land in controversy claimed by them under their pleas of the ten-year statute of limitations. This motion was overruled by the trial court and judgment was rendered that appellees Pearson recover of and from appellants the title to and possession of approximately 115 acres of the 166.19 acres of the land in controversy, and that appellees Jensen recover approximately 50 acres thereof. The trial court by its judgment upheld appellants' claimed record title to the land in controversy and awarded them on their cross-action the title to and possession of approximately one acre of said land, the record title to which is identical with the record title to the balance of the 166.19 acre tract awarded appellees.

While both appellees Pearson and Jensen alleged that they had a record title to those portions of the land in controversy claimed by them, neither of said appellees attempted to establish a record title thereto in themselves. Both appellees Pearson and Jensen owned by deed, and occupied during the claimed limitation period, tracts of land adjoining the 166 acre tract in controversy on the west. Their claims to the land in controversy, as shown by the record, were based entirely on the ten-year statute of limitations by virtue of their claimed use thereof for cattle pasturage purposes. No taxes were ever paid on any part of the land in controversy by either of said appellees.

This appeal involves two separate and distinct causes of action, one being the cause of action between appellants and appellees Pearson involving the approximately 115 acres of land awarded them by the judgment of the trial court, and the other being the cause of action involving the approximately 50 acres of land awarded appellees Jensen by the court's judgment.

Appellants contend that neither appellees Pearson nor Jensen, under the undisputed evidence of the case, established a limitation title to any part of the land in controversy in the trial court, and that appellants were entitled to a judgment against both of appellees on the answers to ultimate and controlling issues contained in the jury's verdict and on their established record title to the land in controversy.

No brief has been filed in this court by appellees Pearson and, since they have not availed themselves of oral argument, this court must, under Rule 419, Texas Rules of Civil Procedure, assume as true all facts stated by appellants in their brief, and render judgment in conformity therewith.

The controlling question presented in the appeal as applied to the claims of appellees Pearson is whether there is an irreconcilable conflict between the answer to special issue No. 3, wherein the jury found that said appellees had held peaceable and adverse possession of the land so claimed by them for a period of ten years during the claimed limitation period, and the answer to special issue No. 15, wherein it was found that said appellees were not holding said land during said ten-year period adversely to the true owner thereof, whether, under this record, the answer to said special issue No. 15 must be construed as a special finding on an ultimate issue in the case which must be given controlling effect

over the general finding in answer to special issue No. 3, submitting the ten-year statute of limitation.

Appellants contend that there is no conflict between the answers to said special issue No. 15 and said special issue No. 3, and that appellees Pearson's limitation claim to the land in controversy must be determined from the answer to the ultimate and controlling question submitted under special issue No. 15 of whether or not the Pearsons were "holding the land adversely and in hostility to the true owners." Said special issue No. 3 reads:

"Do you find from a preponderance of the evidence that Cross-Defendants N. W. Pearson and wife, have had peaceable, adverse, and continuous possession of that part of the land involved in this cause, indicated on the plat introduced on the trial of this cause and designated Exhibit 1, embraced within the letters 'H' to 'Z-2' to 'Z' and back to 'H', and more fully described as follows: (here follows metes and bounds description of the portion of the 166 acres claimed to have been enclosed by Pearson) using or enjoying the same for a period of 10 years or more after the year 1925 to the filing of Cross-Plaintiffs' first amended original answer and cross-action on Oct. 9, 1939."

The court in its charge defined the term "peaceable possession" as such possession "as is continuous and uninterrupted by adverse suit to recover the estate." The term "adverse possession" was defined as "an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another."

Said special issue No. 15 reads:

"If you have answered Special Issue No. 3 'Yes', then answer the following:

"Do you find from a preponderance of the evidence that N. W. Pearson, during said ten-year period, was holding the land described in Special Issue No. 3 adversely and in hostility against the true owner?"

The jury answered special issue No. 3 "Yes", and special issue No. 15 "He was not."

It is well settled in this state that, in order for a claimant to establish a title under the ten-year statute of limitations, he must have held the land claimed continuously for the prescribed period adversely to and in hostility against the true owner thereof. Satterwhite v. Rosser, 61 Tex. 166; Hartman v. Huntington, 11 Tex.Civ.App. 130, 32 S.W. 562.

Appellants base their contention that under the verdict of the jury said appellees have failed to establish the fact that they had held the land claimed by them adversely to and in hostility against the true owners thereof for the prescribed period of time and that the judgment of the trial court awarding said land to said appellees must be reversed and a judgment here rendered in appellants' favor mainly on the principles of law laid down in the cases of Bennett v. Carey, Tex.Civ.App., 99 S.W.2d 1105, writ of error dismissed and Cuniff v. Bernard Corporation, Tex.Civ. App., 94 S.W.2d 577, writ of error refused.

The fact situation and the questions involved in the case of Bennett v. Carey, supra, are similar in all material respects to those in the instant case. In that case, as in the instant case, the defendant claimed the land involved under the ten-year statute of limitations. The plaintiff in that case, as in the instant case, had established a record title to the land in controversy. In answer to special issue No. 1, the jury had found that the defendant had gone into actual possession of the land claimed by him under a claim of right and that he had held adverse possession thereof by cultivating, using, and enjoying it continuously, for a period of ten years before the filing of the suit.

In answer to special issue No. 2, the jury had found that the defendant had taken possession of the land under a claim of right hostile to the claim of the plaintiff, and that he had held adverse and peaceable possession thereof and had maintained fences around the portion claimed by him for a period of ten years continuously before the filing of the suit. However, in answer to a special charge requested by plaintiff, the jury found that the defendant had taken actual possession of said land and had fenced and used the portion so fenced as a pasture, but that he had not claimed title thereto as against the true owner thereof. The trial court rendered judgment in favor of plaintiff, the record title owner, for the title and possession of the land sued for. On appeal, the appellant, the limitation claimant, took the position that the court had erred in entering judgment for the record title owner, in view of the finding of the jury, in response to special issues Nos. 1 and 2, that the limitation

claimant had had adverse possession of the land in controversy for more than ten years. The appellate court in its opinion held that the answer of the jury in response to special charge No. 2, to the effect that the limitation claimant had not claimed title against the true owner, was a determinative and controlling issue in the case which, when found to exist, completely destroyed the plaintiff's claim to title by limitation, and that being an ultimate and controlling issue it was proper for the court to submit it.

The appellate court in its opinion relied upon the principles of law announced in the case of Cuniff v. Bernard Corporation, Tex.Civ.App., 94 S.W.2d 577, writ of error refused, wherein the jury had found that the limitation claimant had acknowledged or recognized by his words or acts that the record title owner was the owner of the land in controversy, and held specifically that, even if the special finding that the defendant had not claimed title against the true owner could be treated as contradictory of the general issues submitting the ten-year statute of limitations, still the special finding of recognition must be given controlling effect.

█ Under the above authorities and particularly in view of the fact that appellee Pearson testified unequivocally in the trial court that he was not trying to take the land away from the people who owned it, we think that the special finding of the jury that appellees Pearson were not claiming said land adversely and in hostility against the true owners must be given controlling effect and that, as in the cases above cited, the general finding in answer to said special issue No. 3 must be treated as a mere legal conclusion, the effect of which was destroyed by the adverse finding of a controlling fact upon which such conclusion rested. Bennett v. Carey, Tex.Civ. App., 99 S.W.2d 1105; Cuniff v. Bernard Corporation, Tex.Civ.App., 94 S.W.2d 577; Houston Oil Co. v. Howard, Tex.Civ.App., 256 S.W. 340, affirmed, Tex.Com.App., 294 S.W. 848.

It follows that the judgment of the trial court as to the claims of appellees, N. W. Pearson and wife, to any part of the land in controversy must be reversed and judgment here rendered in favor of appellants.

The controlling question presented in the appeal as applied to the limitation claims of appellees Jensen is whether notice, either actual or constructive, was, during the claimed limitation period, brought home to appellants, the record owners of the land, of the repudiation of their title to the land in controversy by the performance of acts by said appellees which, in law, would charge the appellants, the record owners, of a definite undivided interest therein, with notice of the repudiation by said appellees of their title to said land and of the claim of ownership of the land by said appellees.

As above stated, the jury found in response to special issues Nos. 1 and 2, that appellees Jensen had had peaceable and adverse possession of the land claimed by them, using and enjoying it for a period of ten years continuously after 1911 and after 1927 and before April 8, 1939. In answer to special issues Nos. 11 and 12, the jury found that said appellees had not been in adverse possession of that part of the land claimed by them under a claim of right inconsistent with and hostile to the claim of Norman Kittrell, Jr., who was trustee for the record owners thereof in 1918, and in answer to special issue No. 13 they found that in 1911 through March, 1924, said appellee had recognized Norman Kittrell, Jr., as the record owner of the land in controversy.

The majority of the appellants herein were members of a partnership firm known as the Southern Fruit & Land Company. At all times material to this appeal, Norman Kittrell, Jr., held the record title to the land in controversy as trustee for the record owners thereof. In 1918 he made an inspection of said land and while there visited with appellee Jensen and discussed its ownership with him. At that time Jensen made no claim of ownership of said land to Kittrell. In 1924 Norman Kittrell, Jr., wrote Jensen in reference to said land. On March 16, 1924, appellee Jensen wrote Norman Kittrell, Jr., a letter in which he acknowledged that Kittrell was at that time the owner of the land and advised Kittrell to "hold the land for oil."

A careful analysis of the evidence in the record on which appellees Jensen rely to establish the facts on which they base their claim to a limitation title to the land claimed by them discloses the following additional facts:

1. That no houses, barns or other like improvements were constructed on the land

by said appellees during the claimed limitation period.

2. That the fences which formed the exterior enclosure of the land in controversy were not built by Jensen. They were already on the land when they commenced using it in 1911. The record shows that Jensen erected only three short interior fences on said land during the claimed limitation period. He built one in 1911. He rebuilt another short interior fence in 1927, and later during said period he enlarged a calf pasture.

3. That the uses and purposes made by said appellees of the land in controversy were of the same character, as far as the record shows, from the year 1911, when said appellees' occupation thereof began, until the year 1939. These facts are shown by the testimony of their witnesses, E. E. Moore, Guy Moore, and Jensen himself, who testified that Jensen had used the land for pasturage purposes from 1911 to 1920 and that this claimed use was also followed by his tenants. They testified that E. E. Moore had lived in the Jensen house, which adjoins the land in controversy, as Jensen's tenant, from some time in 1923 to 1925, after which time his brother, Guy Moore, moved onto the premises and continued to make the same use thereof as E. E. Moore had made, and that he occupied Jensen's house as his tenant until Jensen's return to the place in 1927. They testified that after Jensen's return he continued to make the same use of the property, the pasturage of stock, as his tenants had made.

4. That there was no actual notice to appellants or any of them that Jensen was asserting an adverse claim to said land or that he had repudiated appellants' title thereto until approximately a year before the filing of this suit. The record shows that more than two years prior to June, 1940, three men came to Jensen's place, at different times, and told him that they owned the land in controversy and that he pointed the land out to them. He asserted no claim to the land to the first party who claimed to be its owner. That thereafter a second man, who claimed to be an owner of the land involved, called on Jensen and that Jensen asserted no claim of ownership thereof to him. That when the third man called on Jensen approximately two years prior to June, 1940, Jensen told him that he was claiming a portion of said land. That, further, as above stated, by letter dated March 16, 1924, Jensen, in writing, acknowledged Norman Kittrell, Jr., who was appellants' trustee, to be the owner of the land and advised him to hold it for oil.

5. That Jensen testified that he was claiming the land awarded to him continuously from 1909 or 1911 until the date of the filing of the suit in 1939, and that his claim was the same from 1911 to March, 1924, as it was after 1924 to 1939. The record shows that he was making the same use of the land in March, 1924, through his tenant, E. E. Moore, as was made subsequent to that date and to 1939, and that the same use was being made thereof by Jensen's tenant, E. E. Moore, when said letter was written by Jensen to Norman Kittrell, Jr.

█ It is well settled that, where entry upon land is made by a limitation claimant in recognition of the title of the true owner thereof, a claim of title thereto by adverse possession cannot be perfected in favor of such party until he had established that he had repudiated the owner's title and commenced the assertion of an open and notorious claim to the land and that he has brought home to the owner thereof actual or constructive notice of such repudiation of the owner's title and the commencement of the assertion of an adverse claim to the land. Thompson v. Richardson, Tex.Com. App., 221 S.W. 952; Federal Land Bank of Houston v. King, Tex.Com.App., 122 S.W.2d 1061; Davis v. Lund, Tex.Com. App., 41 S.W.2d 57; Mosley v. Gulf Production Co., Tex.Civ.App., 111 S.W.2d 726.

Limitation will not commence to run in favor of such limitation claimant until such repudiation has taken place and notice thereof and the commencement of the assertion of a hostile claim to the land has been clearly brought home to the owner thereof, either actually or constructively. Durham v. Houston Oil Co., Tex.Civ.App., 193 S.W. 211, affirmed, Tex.Com.App., 222 S.W. 161; Davis v. Lund, Tex.Com.App., 41 S.W.2d 57.

█ It is also well settled that when a party claiming the title to land by limitation has entered upon the land without knowledge or consent of the owner but, during the claimed limitation period, he acknowledged the title thereto to be in another, such acknowledgment of itself will defeat such party's limitation claim to the land. Houston Oil Co. v. Pullen, Tex.Com. App., 272 S.W. 439; Wier Lumber Co. v.

Eaves, Tex.Com.App., 296 S.W. 481; Thompson v. Richardson, Tex.Com.App., 221 S.W. 952; Bruni v. Vidaurri, Tex.Sup., 166 S.W.2d 81.

■ The rules of law above outlined are in accord with the provisions of Article 5515, Revised Civil Statutes, which defines "adverse possession" as the "actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim" of the owner. It follows that where an adverse claimant has entered upon land without asserting a claim at the outset, he had not "commenced" under a claim of right. Chance v. Branch, 58 Tex. 490. Further, where such adverse claimant recognizes the owner's title after his entry on said land, his claim has not been "continued" under a claim of right. Satterwhite v. Rosser, 61 Tex. 166. In each of above instances, before limitation claim can be asserted against the owner of land, there must be (1) a repudiation of the owner's title, (2) with notice thereof clearly brought home to the owner, actually or constructively, (3) with the further proof that there has been "adverse possession of the land for the necessary limitation period subsequent to the time of notice." The burden of proof rests on the adverse claimant to clearly establish these requirements.

■ It has been further held that even where the facts as to the use and occupancy of land by an adverse claimant might, as a matter of law, be sufficient to charge an owner with notice of his possession and thereby be sufficient to commence the operation of the statute had the original entry been made under the assertion of an adverse claim or had there been no subsequent recognition of the owner's title, yet where the entry was subservient or there had been a recognition of the owner's title, the continuation of that possession with the same character of use is not of itself evidence sufficient to raise the question of a repudiation of the owner's title and notice to the owner that there had been a change from a friendly to a hostile claim. Durham v. Houston Oil Co., Tex.Com.App., 222 S.W. 161; Stewart v. McKee, Tex.Civ.

App., 150 S.W.2d 415, affirmed 139 Tex. 260, 162 S.W.2d 948.

■ Unless an adverse claimant who has previously recognized the owners' title to land has established that his own use and occupancy thereof subsequent to his recognition of the owner's title is of such a different character, by virtue of his having asserted rights of ownership in the land from those which he had previously asserted, as to clearly and unequivocally charge the owner with notice of his claim, the adverse claimant has failed to establish his limitation claim. Durham v. Houston Oil Co., Tex.Com.App., 222 S.W. 161; Federal Land Bank v. King, Tex.Com.App., 122 S.W.2d 1061; Scott v. Rodgers, Tex. Com.App., 6 S.W.2d 731.

■ In the instant case, appellees have failed to prove by any fact or circumstance that their subservient possession of part of the land in controversy which, as the jury found, had been continued from 1911 through March 1924, had ever been repudiated by them and changed to a possession hostile to the title of the record owners thereof, or that notice, either actual or constructive, of such a repudiation had been brought home to appellants, who are shown to have been the owners of a legal and record title to a definite undivided interest in the land in controversy, until a short time prior to the filing of this action. It follows that appellees, J. A. Jensen and wife, have failed to establish a limitation title to any part of the land in controversy in themselves.

The judgment of the trial court awarding to appellees, J. A. Jensen and wife, Carrie Jensen, and to appellees, N. W. Pearson and wife, Agnes Pearson, the title to and possession of parts of the land in controversy is hereby reversed and judgment is here rendered that appellants recover of and from said appellees the title to and possession of those portions of the 166.19 acres of land in controversy as claimed by them respectively. The judgment of the trial court as to the approximately one acre of land awarded appellants is affirmed.

Reversed and rendered in part and in part affirmed.